```
              IN THE UNITED STATES DISTRICT COURT
                  NORTHERN DISTRICT OF TEXAS
                      FORT WORTH DIVISION

BIMBO BAKERIES USA, INC.,        §
                                 §
          Plaintiff,             §
                                 §
VS.                              §   NO. 4:06-CV-180-A
                                 §
PINCKNEY MOLDED PLASTICS,        §
INC., ET AL.,                    §
                                 §
          Defendants.            §
```

## MEMORANDUM OPINION
### and
### ORDER

Before the court for decision are the motion of plaintiff, Bimbo Bakeries USA, Inc., ("Bimbo") for summary judgment as to the counterclaims of defendant Pinckney Molded Plastics, Inc., ("PMP") and the motion of PMP for summary judgment as to the entire case. The court is granting Bimbo's motion and denying PMP's motion in part and granting it in part.[1]

### I.

### Overview

Bimbo, a large bakery, claims that the bakery goods containers, known as Universal Baskets ("UBs"), sold to it by PMP breached the implied warranties of merchantability and fitness for a particular purpose. Bimbo seeks relief in the form of money damages. PMP claims that neither of these implied warranties applies and that, regardless, there was no breach. PMP filed counterclaims against Bimbo alleging breach of

---

[1] As noted in the court's February 20, 2007, order, in deciding the motions for summary judgment the court is taking into account PMP's objections to Bimbo's summary judgment evidence contained in PMP's motion and brief in support filed on February 7, 2007.

contract, unjust enrichment, fraud, and negligent misrepresentation. Bimbo contends that no contract of the kind claimed by PMP existed, that it did not engage in fraud or make any misrepresentations, and that it was not unjustly enriched.

II.

Undisputed Facts

The facts set forth below are undisputed in the summary judgment record:[2]

As part of its baking operations, Bimbo utilizes plastic baskets that take baked goods from the production line to the final retail establishments for sale to the public. PMP is a manufacturer of plastic baskets and holds itself out as having over forty years of experience in manufacturing baskets and trays for the baking industry. In 2001, Bimbo asked PMP to design and manufacture a UB. Bimbo expected to achieve significant savings by use of the UBs because they would make automation possible and would allow Bimbo to replace most of its different-sized baskets with the UBs.

PMP designed the UB with "tabs" located on the bottom of the UB intended to fit into slots on the top of the lower basket when stacked. On or about December 4, 2001, Bimbo and PMP entered into the written agreement that obligated Bimbo to purchase 2.1 million UBs at a certain price that could fluctuate based on the price of raw materials. PMP agreed to pay for the freight for

---

[2] The undisputed facts section recites undisputed facts set forth in the parties' joint pretrial order filed March 19, 2007, as well as facts otherwise supported by the record.

2

the first 2.1 million baskets sold.[3] There was no express agreement between the parties as to who would pay the freight after the first 2.1 million UBs were delivered.[4]

In March 2002, Bimbo received its first shipment of the UBs. On September 1, 2004, Bimbo sent written notification to PMP that one of Bimbo's customers had complained that the tabs on the UBs were breaking, causing stacks of baskets to fall and creating a safety hazard for the people near the baskets. Bimbo installed an automatic basket stacker in October 2004, and shortly thereafter reported to PMP that the broken tabs were causing the stacks of loaded UBs to fall when stacked with the automatic stackers.

In October 2004, Rich Kruyer ("Kruyer"), one of PMP's design engineers, as well as other PMP employees, visited Bimbo to determine the nature of the tab breakage problem. On October 27, 2004, Kruyer submitted a written PowerPoint presentation, which included statements that if the tabs are broken, a basket may shift fore and aft, causing other features to disengage, which can permit a basket to collapse, and that this could explain a complaint about broken corners. Kruyer's presentation also described possible design changes to address the tab breakage problem. On April 16, 2005, PMP sent written correspondence to

---

[3] In a letter dated February 14, 2005, Don Verna, President of PMP, stated that "[i]n going through my files, I found the attached document. It clearly states that we would pay for the freight on the first 2,100,000 baskets." See App. to Pl.'s Mot. Summ. J. 2.

[4] The parties dispute the meaning of the language "FOB our plant," contained in the written agreement, as it related to who would pay the freight. App. to Pl.'s Mot. Summ. J. 1.

3

Bimbo stating that PMP had "analyzed returns over the past several months to determine if the UB breakage was in any way the result of product design" and that the "investigations found breakage to have resulted from circumstances other than product design." App. Pl.'s Resp. Def.'s Mot. Summ. J. at 83-84.

After several additional meetings and proposals, in September 2005 PMP modified the mold to strengthen the tabs. PMP made the first shipment of re-designed baskets to Bimbo in mid-November 2005. By that time, Bimbo had purchased approximately 2.8 million of the older-style UBs.

In 2005, Bimbo began to notice shortages of baskets in its operations. An inventory conducted in October 2005 revealed that Bimbo had 1,443,797 UBs on hand with the rest unaccounted for.

On November 29, 2005, PMP offered a program whereby the older-style UBs could be ground up and "re-shot" through a revised mold. The "re-shot" baskets would have the strengthened tab. The cost for this program would be $2.49 per basket plus $0.58 freight per basket. Bimbo did not accept this offer.

### III.
### Summary Judgment Standard

A party is entitled to summary judgment on all or any part of a claim as to which there is no genuine issue of material fact and as to which the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247 (1986). The moving party has the initial burden of showing that there is no genuine issue of material fact. <u>Anderson</u>, 477 U.S. at 256. The movant may discharge this

4

burden by pointing out the absence of evidence to support one or more essential elements of the non-moving party's claim "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323-25 (1986).  Once the moving party has carried its burden under Rule 56(c), the non-moving party must do more than merely show that there is some metaphysical doubt as to the material facts. <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).  The party opposing the motion may not rest on mere allegations or denials of pleading, but must set forth specific facts showing a genuine issue for trial. <u>Anderson</u>, 477 U.S. at 248, 256.  To meet this burden, the nonmovant must "identify <u>specific evidence in the record and articulate the 'precise manner' in which that evidence support[s] [its] claim[s]</u>." <u>Forsyth v. Barr</u>, 19 F.3d 1527, 1537 (5th Cir. 1994) (emphasis added).  An issue is material only if its resolution could affect the outcome of the action. <u>Anderson</u>, 477 U.S. at 248.  Unsupported allegations, conclusory in nature, are insufficient to defeat a proper motion for summary judgment. <u>Simmons v. Lyons</u>, 746 F.2d 265, 269 (5th Cir. 1984).  "'Summary judgement, to be sure, may be appropriate, even in cases where elusive concepts . . . are at issue, . . . if the nonmoving party rests merely upon <u>conclusory allegations, improbable inferences, and unsupported speculation</u>.'" <u>Forsyth</u>, 19 F.3d at 1533 (quoting <u>Krim v. BancTexas Group, Inc.</u>, 989 F.2d 1435, 1449 (5th Cir. 1993) (emphasis added)).

The standard for granting a motion for summary judgment is the same as the standard for rendering judgment as a matter of law. Celotex Corp., 477 U.S. at 323. If the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. Matsushita, 475 U.S. at 597. See also Boeing Co. v. Shipman, 411 F.2d 365, 374-75 (5th Cir. 1969) (en banc) (explaining the standard to be applied in determining whether the court should enter judgment on motions for directed verdict or for judgment notwithstanding the verdict).

IV.

PMP's Motion

Consistent with the discussions between the court and counsel, and the rulings announced, during the pretrial conference conducted in the above-captioned case on March 19, 2007, the court is granting PMP's motion as to Bimbo's claim that PMP breached an implied warranty of merchantability and as to Bimbo's claim for damages based on injuries suffered by third persons by reason of falling UBs, and is denying it in all other respects.

V.

Bimbo's Motion

A.  There is No Evidence of a Contract of the Kind Claimed by PMP

PMP filed a counterclaim against Bimbo for breach of a contractual commitment by Bimbo to pay the freight for all baskets purchased after the initial 2.1 million. Bimbo argues,

6

in its motion for summary judgment, that there never was a such a contract. It is not in dispute that PMP agreed to pay the freight on the first 2.1 million baskets and that in January of 2005 Bimbo agreed to begin paying the freight on the baskets sold from that date forward. The issue is whether there is evidence that there was a contract for Bimbo to pay the freight from June 2004, when delivery of the 2.1 million UBs was completed, through January 2005.

The following elements are required for parties to form a binding contract: (1) an offer, (2) acceptance in complete agreement with the terms of the offer, (3) a meeting of the minds, (4) parties' consent to the terms, and (5) intent that the contract be mutual and binding upon execution and delivery. Buxani v. Nussbaum, 940 S.W.2d 350, 352 (Tex.App. – San Antonio, 1997, no writ). For the contract to be enforceable, "the minds of the parties must meet with respect to the subject matter of the agreement and all its essential terms." Weynand v. Weynand, 990 S.W.2d 843, 846 (Tex.App. – Dallas, 1999, pet. denied). In evaluating whether there was in fact a meeting of the minds, the court relies on objective standards of what the parties said and did, rather than parties' alleged subjective states of mind. Slade v. Phelps, 446 S.W.2d 931, 933 (Tex.Civ.App. – Tyler, 1969, no writ).

In deciding whether there was evidence of a meeting of the minds, and thus a contract, for payment of freight during the disputed time period, the court looks objectively at what parties said and did. It is undisputed that Bimbo never agreed to pay

7

the freight for any baskets until January 2005.  Nevertheless, PMP argues that "ordinary rules of construction permit custom or usage evidence both to explain the meaning of language and to imply terms, where no contrary intent appears from the terms of the contract."  However, here, contrary intent did exist because the evidence is clear that Bimbo never intended to pay the freight.  Thus, there was no meeting of the minds to form a contract for which the court could imply terms.

B.   <u>There is No Evidence of Misrepresentation</u>

In Texas, the elements for a negligent misrepresentation claim are:

> (1) the representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplies "false information" for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation.

<u>Federal Land Bank Ass'n of Tyler v. Sloane</u>, 825 S.W.2d 439, 442 (Tex. 1991) (adopting section 552 of the Restatement (Second) of Torts).  The type of false information required to prevail is a misstatement of <u>existing fact</u>, not a promise of future conduct.  <u>Allied Vista, Inc. v. Holt</u>, 987 S.W.2d 138, 141 (Tex.App. – Houston [14th Dist.], 1999, pet. denied).  "A promise to act or not to act in the future cannot form the basis of a negligent misrepresentation claim."  <u>Roof Systems, Inc. V. Johns Manville Corp.</u>, 130 S.W.3d 430, 439 (Tex.App. – Houston [14th Dist.], 2004, no pet.).

PMP argues that Bimbo made misrepresentations to PMP, namely, that if the UBs were "corrected" to fit Bimbo's specifications Bimbo would enter into a new long-term supply agreement with PMP.  In its response, Bimbo maintains that the tort of negligent misrepresentation only applies to professionals who give advice to others in the course of their business, not to customers like Bimbo who are seeking

9

to buy goods.  Alternatively, Bimbo claims that no such representation was ever made, and, in the further alternative, that the alleged misrepresentation is the sort of future conduct that does not give rise to a negligent misrepresentation cause of action.  Assuming, arguendo, that the alleged representation was made, the court agrees with Bimbo that it is the sort of "promise to act or not to act in the future" that "cannot form the basis of a negligent misrepresentation claim."  Roof Systems, 130 S.W.3d at 439.[5]

C.   <u>There is No Evidence to Support the Fraud Counterclaim</u>

Under Texas law, fraud occurs when (1) a party (a) misrepresents a material fact, (b) knows the representation is false or makes it recklessly without any knowledge of its truth, and (c) makes the false representation with the intent that it should be acted on by the other party, and (2) the other party justifiably relies on the representation and suffers injury because of it.  Ernst & Young v. Pacific Mut. Life Ins. Co., 51 S.W.3d 573, 577 (Tex. 2001).  Under certain circumstances, the first element of fraud can be met if the party concealed or failed to disclose a material fact.  United Teacher Assocs. Ins. Co. v. Union Labor Life Ins. Co., 414 F.3d 558, 566 (5th Cir. 2005).

In Texas, "a failure to disclose information does not constitute fraud unless there is a duty to disclose the

---

[5] Because the court finds that PMP's claim for negligent misrepresentation fails on other grounds, the court does not visit the issue of whether such a cause of action is applicable outside the context of a professional giving advice to others in the course of the business of the professional.

10

information." Bradford v. Vento, 48 S.W.3d 749, 755 (Tex. 2001) (citing Ins. Co. of N. Am. v. Morris, 981 S.W.2d 667, 674 (Tex. 1998)).  Therefore, "silence may be equivalent to a false representation only when the particular circumstances impose a duty on the party to speak and he deliberately remains silent." Bradford, 48 S.W.3d at 755 (citing SmithKline Beecham Corp. V. Doe, 903 S.W.2d 347, 353 (Tex. 1995); Smith v. Nat'l Resort Cmtys., Inc., 585 S.W.2d 655, 658 (Tex. 1979)).  Whether such a duty exists is not a question of fact, but a matter of law.  See Bradford, 48 S.W.3d at 755.  While Texas courts of appeals have held that a duty to disclose "may arise in an arm's-length business transaction when a party makes a partial disclosure that, although true, conveys a false impression," id., the Texas Supreme Court has never affirmed such decisions, see id.  In addition, the Court has explicitly declined to adopt section 551 of the Restatement (Second) of Torts, which recognizes a general duty to disclose facts in a commercial setting.  See id. at 755-56 (stating that "[w]e have never adopted section 551").  Thus, it is unclear whether the Texas Supreme Court would recognize a duty to disclose absent a confidential or fiduciary relationship. United Teacher, 414 F.3d at 565-66.

To determine a question of state law, federal courts look to final decisions of the state's highest court.  Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938); St. Paul Fire & Marine Ins. Co. v. Convalescent Servs., Inc., 193 F.3d 340, 342 (5th Cir. 1999). Although federal courts may look to intermediate appellate court opinions for guidance, such opinions are not controlling.  United

11

Teacher, 413 F.3d at 565-66 (citing Matheny v. Glen Falls Ins. Co., 152 F.3d 348, 354 (5th Cir. 1998)).  If the question of law has not been decided by the state's highest court, the federal court must do its best to determine what the highest court of the state would decide.  Id. at 566 (citing St. Paul Fire, 193 F.3d at 342)).

The Fifth Circuit's opinion in United Teacher is instructive:

> A reasonable jurist might well conclude, certainly after Bradford, that a duty to disclose exists in Texas only in the context of a confidential or fiduciary relationship.  This court has so held in Coburn[6], the only Fifth Circuit case that discusses the relevant portion of Bradford.  However, apart from Coburn, it would be fair to say that courts after Bradford (including this court) have not gotten the message, but have instead continued to find that a duty to disclose can exist in Texas absent a confidential or fiduciary relationship.

Id. at 566 (footnote added) (citing, for example, Rimade Ltd. v. Hubbard Enterprises, Inc., 388 F.3d 138, 143 (5th Cir. 2004); Lewis v. Bank of Am. NA, 347 F.3d 587 (5th Cir. 2003)).

As the court stated in United Teacher, "[f]ortunately, we need not decide whether a duty to disclose exists in Texas absent a confidential or fiduciary relationship because even if such a duty did exist, [the] fraud claim would fail."  414 F.3d at 566.  Assuming Bimbo had a duty to disclose, PMP's claim cannot survive

---

[6] Coburn Supply Co. v. Kohler Co., 342 F.3d 372, 377-78 (holding that a confidential or fiduciary relationship must exist before the duty to disclose will arise).

the motion for summary judgment because there is no evidence that Bimbo breached this duty. The fact that PMP implied from Bimbo's actions that Bimbo planned to enter into a supply contract with PMP when in fact Bimbo was negotiating with another supplier does not constitute actionable fraud. The summary judgment evidence is that Bimbo informed PMP that it was "looking at other vendors." App. to Pl.'s Mot. Summ. J. 84. There is no evidence that Bimbo concealed or failed to disclose a material fact, thus PMP's fraud claim must fail and the court does not reach a decision as to the other elements of the claim.

D.   <u>There is No Evidence of Unjust Enrichment</u>

The theory of unjust enrichment may apply when one person has obtained a benefit from another by fraud, duress, or the taking of undue advantage. <u>Heldenfels Bros., Inc. v. City of Corpus Christi</u>, 832 S.W.2d 39, 41 (Tex. 1992). "Unjust enrichment is not a proper remedy merely because it might appear expedient or generally fair that some recompense be afforded for an unfortunate loss to the claimant, or because the benefits to the person sought to be charged amount to a windfall." <u>Id</u>. at 42; <u>HECI Exploration Co. v. Neel</u>, 982 S.W.2d 881, 891 (Tex. 1998).

Here, assuming Texas law recognizes unjust enrichment as an independent cause of action, Bimbo claims it is entitled to summary judgment because there is no evidence of fraud, duress, or undue advantage. Whether Bimbo received a "windfall" with respect to the UBs is a disputed question of fact, but such a

13

benefit cannot constitute unjust enrichment absent some type of unlawful behavior. The court agrees that the summary judgment record is devoid of evidence of fraud, duress, or undue advantage.

## VI.

### Order

For the reasons discussed above, the court concludes that PMP's motion for summary judgment should be granted in part and denied in part, and Bimbo's motion for summary judgment should be granted. Therefore,

The court ORDERS that Bimbo's causes of action based on an implied warranty of merchantability and for damages related to injuries suffered by third persons because of falling UBs be, and are hereby, dismissed.

The court further ORDERS that all of PMP's claims and causes of action against Bimbo in the above-captioned action be, and are hereby, dismissed.

SIGNED March 20, 2007.

                                                   /s/ John McBryde
                                                   JOHN McBRYDE
                                                   United States District Judge